**RECORD NO. 14-1383**

In The

# United States Court Of Appeals

## For The Fourth Circuit

## ALLSTATE INDEMNITY COMPANY,

*Plaintiff – Appellee,*

v.

## AMYMELISSA DAVIS,
## individually and as legal guardian for K. K.,

*Defendant – Appellant,*

and

## ROOSEVELT TILMON; MONA TILMON,

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT AIKEN**

_____

**BRIEF OF APPELLANT**

_____

**Todd James Johnson**
**Brett Hamilton Lancer**
JOHNSON, JOHNSON, WHITTLE
  & LANCER ATTORNEYS, P.A.
**117 Pendleton Street, NW**
**P. O. Box 2619**
**Aiken, SC  29802**
**(803) 649-5338**

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO


2.    Does party/amicus have any parent corporations?                               YES     NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                   YES     NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                          YES      NO
         If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************
I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                 _____
        (signature)                                        (date)

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

       Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

       Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

       Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

       The district court erred in granting summary judgment because the
court found the joint obligations provision in the homeowners'
insurance policy to be plain and unambiguous, and serves to preclude
coverage for the negligent, non-criminal acts of an insured due to the
intentional, criminal acts of a separate insured . . . . . . . . . . . . . . . . . . . . . . .  10

           A.   The joint obligations provision does not bar coverage for
Roosevelt Tilmon and Mona Tilmon because it refers to
general policy obligations rather than liability coverage
exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

           B.   The joint obligations provision does not bar the claims
against Mona Tilmon and Roosevelt Tilmon because
those claims allege separate and independent acts of
negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

i

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

Allstate Ins. Co. v. Worthington,
46 F.3d 1005 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

B.L.G. Enter., Inc. v. First Fin. Ins. Co.,
514 S.E.2d 327 (S.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Boggs v. Aetna Cas. and Sur. Co.,
272 S.C. 460, 252 S.E.2d 565 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.P. v. Allstate Ins. Co.,
996 P.2d 1216 (Alaska 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Greenville County v. Ins. Reserved Fund,
313 S.C. 546, 443 S.E.2d 552 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Hendrix v. Employers Mut. Liability Ins. Co. of Wis.,
98 F. Supp. 84 (D.S.C. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hunt v. Cromartie,
526 U.S. 541, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999) . . . . . . . . . . . . 10

Isle of Palms Pest Control Co. v. Monticello Ins. Co.,
319 S.C. 12, 459 S.E.2d 318 (Ct. App. 1994) . . . . . . . . . . . . . . . . . . . . . 13

Manufacturer's Mut. Ins. v. Harvey,
330 S.C. 152, 498 S.E.2d 222 (Ct. App. 1998) . . . . . . . . . . . . . . . . . . . . 17

McCracken v. Government Employees Ins. Co.,
284 S.C. 66, 325 S.E.2d 62 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iii

Poston v. Nat'l Fid. Life Ins. Co.,
    399 S.E.2d 770 (S.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pueschel v. Peters,
    577 F.3d 558 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Quinn v. State Farm Mut. Auto. Ins. Co.,
    238 S.C. 301, 120 S.E.2d 15 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Safeco Ins. Co. Of America v. White,
    913 N.E.2d 426 (Ohio 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wasik v. Allstate Ins. Co.,
    813 N.E.2d 1152 (Ill. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Yarborough v. Phoenix Mut. Life Ins. Co.,
    266 S.C. 584, 225 S.E.2d 344 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES:**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES:**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Fed. R. Civ. P. 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# JURISDICTIONAL STATEMENT

This action was filed in the Court of Common Pleas for Aiken County, South Carolina, on September 21, 2012. An amended complaint was filed in the Court of Common Pleas for Aiken County, South Carolina, on September 10, 2013. On March 14, 2013 the Plaintiff-Appellee, Allstate Indemnity Company (Allstate), filed and served a Declaratory Judgment Action against the parties in the underlying liability lawsuit. The Declaratory Judgment Action was filed in the United States District Court for the District of South Carolina, Aiken Division. Jurisdiction exists with the District Court because there is complete diversity of citizenship between Allstate and the Defendants, and the amount in controversy exceeds $75,000. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. Additionally, this is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57.

The District Court granted summary judgment in favor of the Plaintiff against the defendants. Final judgment was entered on March 21, 2014. The Defendant-Appellant, AmyMelissa Davis filed notice of appeal to this court on April 21, 2014.

1

This court has jurisdiction pursuant to 28 U.S.C. § 1291.  This appeal is from an order granting final judgment under Rule 56, Fed. R. Civ. P.  The appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUE

Whether the district court's order granting summary judgment should be reversed where the district court found the joint obligations provision in the homeowners' insurance policy to be plain, unambiguous and serves to preclude coverage for the negligent, non-criminal acts of an insured due to the intentional, criminal acts of a separate insured.

## STATEMENT OF THE CASE

### The underlying liability lawsuit "2012-CP-02-02369"

This action began on September 21, 2012 when AmyMelissa Davis individually and as legal guardian for K.K., a minor, filed a Summons and Complaint in the Aiken County Court of Common Pleas against Roosevelt Tilmon, Mona Tilmon and Anthony Curtis Tilmon.  In the lawsuit, 2012-CP-02-02369, the Plaintiff sought damages for personal injuries sustained by K.K. as a result of sexual assaults against K.K. that took place in the home of Roosevelt Tilmon, Mona Tilmon and Anthony Curtis Tilmon in or about March and April of 2009.

The Complaint alleged causes of actions against Roosevelt Tilmon and Mona Tilmon for negligent acts and Anthony Curtis Tilmon for intentional acts.

The Summons and Complaint were personally served on Anthony Curtis Tilmon, on September 26, 2012 and on Roosevelt Tilmon and Mona Tilmon on November 7, 2012. The Defendants delivered the Summons and Complaint to their homeowner's insurance company, the Allstate Insurance Company. Allstate agreed to defend them under a reservation of rights and retained counsel for the Defendants.

Through the counsel retained for them by Allstate, the Defendants in the underlying state court action timely filed their Answers. On September 10, 2013 AmyMelissa Davis, Individually and as Legal Guardian for K.K., a minor, filed and served an Amended Summons and Complaint. The Amended Complaint made multiple changes materially affecting the Declaratory Judgment Action (1:13-690-JMC). The amended complaint removed Anthony Curtis Tilmon as a defendant from the underlying liability lawsuit and only includes causes of action for negligent acts for the remaining defendants.

**The Declaratory Judgment Action (1:13-690-JMC)**

On March 14, 2013 Allstate Indemnity Company filed and served a Declaratory Judgment Action against the parties in the underlying liability lawsuit.

3

In its complaint, Allstate alleged that it had no duty to defend or indemnify its insureds (Roosevelt Tilmon, Mona Tilmon and Anthony Curtis Tilmon) for any damages sustained by AmyMelissa Davis, individually, and as legal guardian for K.K., regarding the events taking place during March and April of 2009. Allstate asserted that the Criminal Acts Exclusion in the policy barred coverage for Anthony Curtis Tilmon because his actions constituted an excluded criminal act. Allstate further asserted that the Joint Obligations clause in the policy would serve to bar coverage for any other insureds, including Roosevelt Tilmon and Mona Tilmon. Allstate sought a declaration from the United States District Court for the District of South Carolina, Aiken Division, that it had no duty to defend or indemnify its insureds in the underlying liability suit.

The insureds, Roosevelt Tilmon and Mona Tilmon, did not file an Answer and have not participated in the Declaratory Judgment action.

AmyMelissa Davis, individually, and as legal guardian for K.K., timely filed her answer to the Declaratory Judgment action on April 10, 2013, denying the allegations of the Complaint.

**The Motion for Summary Judgment (1:13-690-JMC)**

On August 26, 2013, Allstate filed a Motion for Summary Judgment in the Declaratory Judgment action filed in the United States District Court. Both parties

4

filed memorandums of law with case law from other jurisdictions supporting their respective positions. On March 21, 2014, the court granted the motion for summary judgment of Allstate Indemnity Company without oral argument. The court declared that Deluxe Homeowners Insurance Policy No. 9 30 260240 01/26 issued to Roosevelt Tilmon by Allstate Indemnity Company does not provide coverage for the claims asserted in the underlying state court action.

The District Court agreed with Davis that the allegations in the underlying lawsuit against Roosevelt Tilmon and Mona Tilmon are for negligent conduct and not for intentional conduct. The court found that the negligent acts of Roosevelt Tilmon and Mona Tilmon are occurrences under the Tilmon Policy. Additionally, the court agreed with the parties that South Carolina Courts have not interpreted an insurance policy containing a joint obligations provision. The court looked to other jurisdictions that have interpreted joint obligations policy language. There is conflicting case law from other jurisdictions outside of South Carolina on the issue of the meaning of a joint obligations clause.

The court adopted the reasoning of the line of cases supporting Allstate Indemnity Company's position.

## The Appeal to the United States Court of Appeals (14-1383)

The Appellant, Davis, timely filed the notice of appeal on April 21, 2014. This appeal involves a question of first impression in the state of South Carolina. The United States District Court and the parties agreed that the case involves a question of first impression in South Carolina.

## Statement of the Facts

The Appellant, K.K., was born November 1, 2001. (JA 146). She is currently twelve years of age. At the time of the events which give rise to the underlying liability lawsuit, she was seven years of age. (JA 146). Prior to the events taking place in 2009, AmyMelissa and her daughter, K.K., resided in Broward County, Florida. (JA 146). When AmyMelissa Davis's elderly mother became ill in May of 2008, AmyMelissa and K.K. moved to Aiken, South Carolina, so that AmyMelissa could care for her mother. (JA 146).

While living in Aiken, South Carolina, AmyMelissa became friends with Mona Tilmon. Mona Tilmon volunteered to take care of K.K. while AmyMelissa was at work and while she cared for her ill mother. (JA 146). In March of 2009, Mona Tilmon began keeping K.K. during the day while her mother, AmyMelissa, worked. (JA 146). Mona Tilmon, Roosevelt Tilmon and Anthony Curtis Tilmon resided at 1001 Northbrook Drive, Aiken, South Carolina 29805. (JA 146). Mona

6

Tilmon is the mother of Anthony Tilmon and Roosevelt Tilmon is the grandfather of Anthony Tilmon.

On three separate occasions between March 25, 2009 and April 12, 2009, Anthony Curtis Tilmon engaged in sexual battery of K.K. while she was under the care and supervision of Mona Tilmon and Roosevelt Tilmon. (JA 147).

On November 4, 2009, K.K. confided in her mother that she had been sexually assaulted by Anthony Curtis Tilmon on three separate occasions. (JA 148). On December 17, 2009, Anthony Curtis Tilmon confessed to the sexual assaults. (JA 148). Notwithstanding the confession, a jury trial was held and Anthony Curtis Tilmon was found guilty of three counts of criminal sexual conduct with a minor in the first degree. (JA 148). The underlying liability lawsuit alleges that Roosevelt Tilmon and Mona Tilmon were negligent, grossly negligent and reckless in failing to perform their duties owed to K.K. (JA 151).

Due to the negligence of Roosevelt Tilmon and Mona Tilmon, K.K. suffered personal injuries which are both physical and mental in nature. These include panic attacks, thoughts of suicide, nightmares, hygiene problems and the loss of her innocence. Furthermore, K.K. experienced mental anguish, humiliation and emotional distress. (JA 151).

## SUMMARY OF ARGUMENT

The district court incorrectly applied the requirements of Rule 56 of the Federal Rules of Civil Procedure to Allstate's Motion for Summary Judgment. Summary Judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court improperly granted summary judgment to Allstate in this case which involves a question of first impression in the State of South Carolina. Both Allstate and Davis presented case law from outside the State of South Carolina to support their respective positions.

Further, the District Court incorrectly applied the general principles of South Carolina insurance law to Allstate's Motion for Summary Judgment. Under South Carolina law, insurance policies are subject to the general rules of contract construction. B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). "Where language used in an insurance contact is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990). In this case the language in the insurance contract that is being interpreted for the first time in South Carolina is the joint obligations provision. The district court did not give due weight to the case law presented by

8

Davis.  The case law presented to the district court by Davis in opposition to

Allstate's Motion for Summary Judgment at a minimum showed the joint

obligations provision in the policy to be ambiguous and capable of two reasonable

interpretations.

Lastly, the district court improperly found the joint obligations provision to

mean that where one insured's acts are excluded from coverage, those acts are

binding upon the other insured and preclude coverage for any claims against the

other insured as well.  (JA 179).  The district court erred in attributing the sexual

battery committed on K.K. by Anthony Tilmon to Roosevelt Tilmon and Mona

Tilmon.  The district court provided no analysis of why the Court adopted the

reasoning of the cases that support Allstate's position.  The district court's order

reflects minimal analysis of the line of cases submitted by Davis that support her

position.

## ARGUMENT

## <u>Standard of Review</u>

A district court's decision to grant summary judgment is reviewed de novo,

applying the same legal standards as the district court.  <u>Pueschel v. Peters</u>, 577 F.3d

558, 563 (4th Cir. 2009).  The Court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In ruling on a

motion for summary judgment, the nonmoving party's evidence is to be believed,

and all justifiable inferences are to be drawn in that party's favor.  Hunt v.

Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731(1999).

## Discussion

**The district court erred in granting summary judgment because the court found the joint obligations provision in the homeowners' insurance policy to be plain and unambiguous, and serves to preclude coverage for the negligent, non-criminal acts of an insured due to the intentional, criminal acts of a separate insured.**

The district court granted Allstate's motion for summary judgment and

declared that Deluxe Homeowners Insurance Policy No. 9 30 2602 40 01/26 issued

to Roosevelt Tilmon by Allstate does not provide coverage for the claims asserted

in the underlying Lawsuit.  (JA 179).  Further, the district court determined that

Allstate does not have any duty to either provide Roosevelt Tilmon or Mona

Tilmon with a defense in the Underlying Lawsuit or indemnify Roosevelt Tilmon

or Mona Tilmon for the amount of any judgment.  (JA 179).

AmyMelissa Davis, Individually and as Legal Guardian for K.K., the

plaintiff and appellant, submits that the district court's ruling was error.  (JA 181).

10

**A.    The joint obligations provision does not bar coverage for Roosevelt Tilmon and Mona Tilmon because it refers to general policy obligations rather than liability coverage exclusion.**

To hold that the Joint Obligations Provision precludes coverage for any claim against Roosevelt Tilmon and Mona Tilmon resulting from the criminal or intentional acts of Anthony Curtis Tilmon is error.  The Joint Obligations Provision does not impose joint liability for the criminal acts of an insured.  The Joint Obligations Provision merely requires the other insureds to comply with the same policy obligations as the named insured.  The named insured is obligated to make timely premium payments and comply with policy terms.  Because the Joint Obligations Provision has no bearing on conduct that gives rise to liability, it does not bar coverage for Roosevelt Tilmon or Mona Tilmon.  See McCracken v. Government Employees Ins. Co., 284 S.C. 66, 325 S.E.2d 62 (1985) (In the absence of any statute or specific policy language denying coverage to a co-insured, the innocent co-insured is entitled to receive coverage).

Allstate Indemnity Company argues that under the Joint Obligations Provision of the policy, Mona Tilmon and Roosevelt Tilmon are bound by the intentional acts of Anthony Tilmon.  As discussed above, the Joint Obligations Provision refers to the insured's obligation to pay the premium and comply with policy terms.  It does not relate to exclusions from coverage.  Moreover, even if the

11

Joint Obligations Provision would bar coverage for liability arising derivatively out of Anthony Tilmon's acts, it would not bar coverage for separate negligent acts of the parent and/or grandparent.

The underlying complaint filed in State Court specifically alleges that Mona Tilmon and Roosevelt Tilmon were negligent in failing to monitor and supervise K.K. so as to keep her safe from harm. (JA 150, 151). The underlying Complaint goes into detail regarding multiple negligent acts and omissions which are covered by the policy. (JA 147-149). Even though the intentional acts of Anthony Tilmon are deemed excluded by the policy, the negligent acts of Mona Tilmon and Roosevelt Tilmon are not. The Joint Obligations Provision merely requires the other insureds to comply with the same policy obligations as the named insured. Here, because of the negligence of Mona Tilmon and Roosevelt Tilmon in failing to uphold their duty to properly supervise K.K., she suffered bodily injury on three separate occurrences. (JA 148).

An insurance contact must be read as a whole, giving appropriate weight to all provisions. Yarborough v. Phoenix Mut. Life Ins. Co., 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976). The Court must consider the entire contract, therefore, to determine the meaning of its provisions. Id. at 592, 225 S.E.2d at 349. It is not uncommon for an insurance policy to contain internal inconsistencies between

12

insuring provisions and exclusions which create an ambiguity in the contract.  See Isle of Palms Pest Control Co. v. Monticello Ins. Co., 319 S.C. 12, 459 S.E.2d 318 (Ct. App. 1994).  Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation that is most favorable to the insured will be adopted.  Quinn v. State Farm Mut. Auto. Ins. Co., 238 S.C. 301, 120 S.E.2d 15 (1961).  The fact that different courts have construed the language of an insurance policy differently is some indication of ambiguity.  Greenville County v. Ins. Reserve Fund, 313 S.C. 546, 443 S.E.2d 552 (1994).  Exclusions in an insurance policy are always construed most strongly against the insurer.  Boggs v. Aetna Cas. and Sur. Co., 272 S.C. 460, 252 S.E.2d 565 (1979)

The Joint Obligations Provision provides:

The terms of this policy impose joint obligations on persons defined as an insured person.  This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.  (JA 69, 70).

This paragraph is placed on pages three and four of the policy under the heading "Insuring Agreement".  (JA 69, 70).

The Criminal Acts Exclusion appears on page 19 of the policy.  (JA 85).  It is in the section captioned "Section 2 - Family Liability and Guest Medical Protection; Coverage X; Family Liability Protection."  (JA 85).  The caption itself is printed in bold ink and larger print than the surrounding text further signifying

13

that it is a separate part of the policy. (JA 85). Under this heading, the caption lists: Losses We Cover. The "Losses We Cover" section specifically references that it covers bodily injury "covered by this part of the policy;" further emphasizing that this section of the policy stands alone. (JA 85). A conclusion that the Joint Obligations Provision further modifies this specific liability coverage would render the reference to "this part of the policy" meaningless. (JA 85).

The Criminal Acts Exclusion appears in this section of the policy, under the caption Losses We Do Not Cover. (JA 85). The caption would lead a reasonable insured to conclude that any exclusions that would bar coverage would appear under this heading. Nowhere in this section does it say that the policy exclusions apply to other insureds for their own act of negligence, nor does it state that even derivative liability is excluded. Hendrix v. Employers Mut. Liability Ins. Co. of Wis., 98 F. Supp. 84 (D.S.C. 1951) (holding that insurer must provide liability coverage for assault and battery committed by insured's employee). No insured could anticipate that a less than explicit provision placed on pages 3 and 4 of the policy would bar the coverage described on page 19 - particularly when the "Losses We Do Not Cover" section appears to be complete and all inclusive. (JA 85-87).

14

The ambiguity is exacerbated by the Joint Obligations Provision placement under the heading "Insuring Agreement".  (JA 69).  There are four paragraphs listed under the "Insuring Agreement".  The first two paragraphs read:

> In reliance on the information you have given us, Allstate agrees to provide the coverages indicated on the policy declarations.  In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any changes in title, use or occupancy of the resident's premises.

> Subject to the terms of this policy, the policy declarations show the location of the resident's premises, applicable coverages, limits of liability and premiums.  The policy applies only to losses or occurrences that take place during the policy period.  The policy period is shown on the policy declarations.  This policy is not complete without the policy declarations.

The third paragraph is substantially similar to the Joint Obligations Provision except that it refers to you or your rather than an insured person.  (JA 69, 70).  The Joint Obligations Provision is the fourth paragraph.  (JA 70).

Clearly the first two paragraphs are of a general nature.  The first provides that Allstate will provide coverage when the premium is paid timely and policy terms are complied with.  The second provides that the policy only applies to losses during the policy period, and that the declarations page is an essential part of the policy.

The first paragraph places certain obligations on the named insured.  He must pay the premium when due and comply with the policy terms.  Exactly which

15

policy terms are not specified, but the next paragraph's reference to the

declarations page would seem to indicate that those are the policy terms referred to

in the first paragraph.  Indeed, compliance with policy terms indicates compliance

with one's responsibilities towards Allstate to keep the policy in force.  It has no

reference to conduct that may create liability to third parties, and whether that

liability would be covered by the policy.

The obvious meaning from this entire section of the policy is that if the

named insured ("you") does not pay the premium, then he has no coverage.  The

Joint Obligations Provision serves to make clear that an insured person would also

have no coverage if the named insured does not pay the premium.

No South Carolina Court has previously interpreted the Joint Obligations

Provision in the Plaintiff's policy.  However, the Tenth Circuit Court of Appeals

examined it in relation to the Criminal Act Exclusion and found it did not apply.

On reasoning much like that set out above, the Tenth Circuit stated:

> We believe, based on the placement of the Joint Obligations clause in
> the policy, that the provision refers to obligations to pay premiums, to
> make timely claims, etc., and that in any event a reasonable insured
> would not understand a "Joint Obligations" clause to exclude liability
> coverage for all insureds when coverage was excluded for one
> insured.

Allstate Ins. Co. v. Worthington, 46 F.3d 1005, 1009 (10th Cir. 1995) (applying

Utah law).

16

The Court held that Allstate had a duty to defend even though the co-insured was denied coverage because of his intentional or criminal acts.

The Supreme Court of Alaska addressed the following question certified from the United States District Court: "Does the insurance policy cover claims that the homeowners negligently failed to prevent a child from being harmed by criminal or intentional acts?" C.P. v. Allstate Ins. Co., 996 P.2d 1216, 1222 (Alaska 2000).

The facts of C.P. are similar to those the Supreme Court faced in Manufacturer's Mut. Ins. v. Harvey, 330 S.C. 152, 498 S.E.2d 222 (Ct. App. 1998). In C.P., the insured's son sexually molested a visiting child in the parents' absence. Allstate refused to provide a defense to the parents based on the same Joint Obligations Provision at issue in this case.

The Alaska Court reached the same result as in Worthington, albeit on somewhat different reasoning. The Court found the Joint Obligations Provision did not exclude coverage for the claims against the parents. The Court noted that the exclusion does not necessarily apply to criminal acts solely committed by an insured person. The criminal acts exclusion does not cover "bodily injury...resulting from...a criminal act or omission." However, it does not state that the insured must commit the criminal act - the act could be that of a third party.

17

For this reason, the exclusions must be interpreted without reference to the Joint Obligations clause.  The Court further noted that in other sections of the policy, Allstate knew how to address these problems explicitly.  It held that the Joint Obligations Provision "is irrelevant to either exclusion where the claims against the insureds who claimed coverage are based on their negligent, unintentional, non-criminal conduct."  996 P.2d at 1227.

The fact that at least two courts have found the Joint Obligations' Provision to be ambiguous demonstrates that it should not be applied in the instant case.  See Greenville County v. Ins. Reserve Fund, 313 S.C. 546, 443 S.E.2d 552 (1994) (different courts construing the same policy term differently is an indication of ambiguity).  Because the provision is ambiguous, it should be interpreted liberally to provide coverage to the parent and grandparent.  The most reasonable interpretation is that it refers only to paying premiums in complying with administrative policy terms.  As such, it would have no bearing on coverage.

**B.    The joint obligations provision does not bar the claims against Mona Tilmon and Roosevelt Tilmon because those claims allege separate and independent acts of negligence.**

The claims against the parent and/or grandparent are independent causes of action arising out of separate and distinct facts.  They are not based on respondent superior, The Family Purpose Doctrine or any other derivative type of claim.

18

Attributing Anthony Tilmon's intentional conduct to Mona and Roosevelt Tilmon does not clearly and unambiguously withdraw coverage for the claim that their negligent, unintentional conduct injured K.K. These are separate and independent allegations of negligence. The Amended Complaint in the underlying liability lawsuit alleges causes of action only against Mona Tilmon and Roosevelt Tilmon, parent and grandparent of Anthony Tilmon. (JA150-152). It is alleged that:

> The defendants breached their duties to K.K. and were negligent, grossly negligent, careless and reckless in that they:
>
> a.    Failed to monitor Anthony Curtis Tilmon's behavior;
>
> b.    Allowed Anthony Curtis Tilmon to be alone with K.K. while they knew or should have known that he may have sexual proclivities towards children;
>
> c.    Allowed Anthony Curtis Tilmon to be with K.K. alone and unsupervised;
>
> d.    Failed to shield K.K. from dangerous conditions, situations and individuals, including child predators such as Anthony Curtis Tilmon;
>
> e.    Failed to warn K.K. and/or AmyMelissa of Anthony Curtis Timon's potential deviant sexual proclivities;
>
> f.    Failed to fulfill their duties *in loco parentis* to plaintiff;

g.     Failed to supervise Anthony Curtis Tilmon, in a manner so as to eliminate the chances of him sexually abusing K.K.; and

h.     Failed to exercise due care for the safety and well being of K.K.

One important aspect of the reading and interpretation of the policy is that the negligent acts of Mona Tilmon and Roosevelt Tilmon are separate and distinct and not derived from the intentional acts of Anthony Tilmon.  Had Mona Tilmon or Roosevelt Tilmon not been negligent, then none of the separate incidents would have occurred.  The purpose of the Allstate policy is to provide the insured's coverage in protection from personal liability when one or more of them is negligent.  But for the negligence of Mona Tilmon and Roosevelt Tilmon, the incidents do not occur.  Had a third party sexually abused K.K., Mona Tilmon and Roosevelt Tilmon would be entitled to a defense for a claim of negligence.  The fact that here the purported criminal act was committed by another insured does not make an otherwise independent claim derivative.

The Court of Appeals of Illinois in 2004 held that the Joint Obligations Provision is not a part of any of the exclusionary clauses but instead is found among the general policy declarations.  It was determined that the Joint Obligations clause refers to the general obligations to pay premiums and to take certain actions before and after a loss and that a reasonable insured would not understand the clause to exclude coverage for all insureds when coverage is

20

excluded for one insured.  Wasik v. Allstate Ins. Co., 813 N.E.2d 1152 (Ill. App. 2004).  The Court in Wasik concluded that the Joint Obligations clause is at best ambiguous.  Therefore, the court did not interpret it broadly enough to exclude coverage for an innocent insured when another insured has intentionally or criminally caused a loss.

Finally, the Supreme Court of Ohio said in 2009 that insurance policy exclusions that preclude coverage for injuries expected or intended by an insured, or injuries arising out of or caused by an insured's intentional or illegal acts, do not preclude coverage for the negligent actions of other insureds under the same policy that are predicated on the commission of those intentional or illegal acts such as negligent supervision.  Safeco Ins. Co. of America v. White, 913 N.E.2d 426 (Ohio 2009).

The allegations against Mona and Roosevelt Tilmon are separate and independent from any criminal act committed by Anthony Tilmon.  Neither the Criminal Acts Exclusion nor the Joint Obligations clause bar coverage for these claims.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment to Allstate.  If necessary, before the Court is Appellant's

21

motion to certify questions of law to the South Carolina Supreme Court.  The

Court deferred ruling upon the motion pending briefing and consideration of the

appeal on the merits.

Respectfully submitted,

  s/ Brett H. Lancer
Brett H. Lancer
Todd J. Johnson
Johnson, Johnson, Whittle & Lancer,
Attorneys, P.A.
117 Pendleton St., NW
Post Office Box 2619
Aiken, SC 29802-2619
Telephone: (803) 649-5338
Facsimile:  (803) 641-4517

*Attorneys for Defendant-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant respectfully request oral argument because this case involves a question of first impression.

                                     s/ Brett H. Lancer
                                    Brett H. Lancer
                                    Attorney for Defendant-Appellant
                                    September 29, 2014

23

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

   this brief contains <u>4,604</u> words, excluding the parts of the brief
   exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportional spaced typeface using
   <u>Word Perfect</u> in <u>14 point Times New Roman</u>.

<u>/s/ Brett H. Lancer</u>
Brett H. Lancer

*Counsel for Appellant*

Dated:  September 22, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 22, 2014, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send

notice of such filing to the following registered CM/ECF users:

> Alfred Johnston Cox
> Janice Holmes
> GALLIVAN WHITE & BOYD, PA
> P.O. Box 7368
> Columbia, SC  22902
> (803) 779-1833
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/  Ethan N. Greenberg
Ethan N. Greenberg
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219
