No. 14-1383

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

────────

## ALLSTATE INDEMNITY COMPANY,

*Plaintiff—Appellee*

v.

## AMYMELISSA DAVIS,
## Individually and as Legal Guardian for K.K.,

*Defendant—Appellant*

## and

## ROOSEVELT TILMON AND MONA TILMON

*Defendants*

────────

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA (COLUMBIA
## DIVISION)

────────

## BRIEF OF APPELLEE ALLSTATE INDEMNITY COMPANY

────────

A. Johnston Cox
Janice Holmes
1201 Main Street, Suite 1200
Post Office Box 7368
Columbia, South Carolina 29202
Telephone: 803-779-1833
*Counsel for Allstate Indemnity
Company*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No.: 14-1383     Caption:     Allstate Indemnity Co. v. Amymelissa Davis, individually and as legal guardian for K.K., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1, **ALLSTATE INDEMNITY COMPANY**, which is the **APPELLEE**, makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? **NO**

2. Does party/amicus have any parent corporations? **YES**

If yes, identify all parent corporations, including grandparent and great-grandparent corporations: **ALLSTATE CORPORATION**

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? **YES**

If yes, identify all such owners: **ALLSTATE CORPORATION**

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? **NO**

5. Is party a trade association? (amici curiae do not complete this question): **NO**

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member: **N/A**

6. Does this case arise out of a bankruptcy proceeding? **NO**

If yes, identify any trustee and the members of any creditors' committee: **N/A**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iii

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................3

STATEMENT OF THE CASE............................................................4

STATEMENT OF FACTS .................................................................5

    A.    Underlying Lawsuit ..........................................................5

    B.    The Policy ......................................................................7

    C.    The Declaratory Judgment Action ....................................9

SUMMARY OF ARGUMENT .........................................................11

ARGUMENT .................................................................................13

    A.    Standard of Review .......................................................13

    B.    The district court correctly determined that the Policy's joint obligations provision applies to preclude coverage under the Policy for Roosevelt Tilmon and Mona Tilmon ..............................15

        1.    The district court correctly adopted the reasoning of the line of cases determining that the plain, unambiguous language of the joint obligations provision operates to preclude coverage ..............................................................16

        2.    The district court correctly determined that the reasoning in the cases relied upon by Davis did not apply ....................20

            a.    South Carolina has rejected the doctrine of reasonable expectations for unambiguous policy language ....................................................................21

            b.    The joint obligations provision does not more than require that other insureds comply with policy obligations, such as payment of premiums..................25

# TABLE OF CONTENTS
(continued)

**Page**

C.    The Policy's exclusion for intentional or criminal acts committed by "any insured" bars coverage under the Policy. .......... 27

D.    The Policy's exclusion for criminal acts excludes coverage under the Policy based on the criminal acts of Roosevelt Tilmon and Mona Tilmon. ............................... 34

E.    There is no "occurrence" because the alleged negligent acts of Roosevelt Tilmon and Mona Tilmon are derivative of Anthony Curtis Tilmon's intentional and criminal acts. ................... 36

CONCLUSION ..................................................... 41

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A).............. 42

CERTIFICATE OF SERVICE .......................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Berge*,
   522 F. Supp.2d 1180 (D.N.D. 2007) .................................................... 16, 17, 20

*Allstate Ins. Co. v. Blount*,
   491 F.3d 903 (8th Cir. 2007) ........................................................ 17

*Allstate Ins. Co. v. Burrough*,
   120 F.3d 834 (8th Cir. 1997) ........................................................ 36

*Allstate Ins. Co. v. Ervin*, No. Civ. A. 05-02800,
   2006 WL 2372237, (E.D.Pa., August 14, 2006)........................................ 17, 18

*Allstate Ins. Co. v. Foster*,
   693 F. Supp. 886 (D. Nev. 1988) .................................................... 29

*Allstate Ins. Co. v. Gilbert*,
   852 F.2d 449 (9th Cir. 1988) ........................................................ 30

*Allstate Ins. Co. v. Grimes*, Case No. M2003-01542-COAR3-CV,
   2004 WL 2533826 (Tenn.Ct.App.2004) ................................................ 17

*Allstate Ins. Co. v. Jordan*,
   16 S.W.3d 777 (Tenn. App. 1999) .................................................... 18

*Allstate Ins. Co. v. Lobracco*, Nos. 92AP-649, 92AP-650
   1992 WL 356270 (Ohio Ct. App. Nov. 24, 1992) ...................................... 19

*Allstate Ins. Co. v. Mangum*, 299 S.C. 226,
   383 S.E.2d 464 (Ct. App. 1989)...................................................... 23

*Allstate Ins. Co. v. McCranie*,
   716 F. Supp. 1440, 1449 (S.D. Fla. 1989).......................................... 32

*Allstate Ins. Co. v. Pond Bar*, Civ. No. 3-94-1310
   1995 WL 5683399 (D. Minn. May 19, 1995) .......................................... 18-19

*Allstate Indem. Co. v. Riverson*, No. 3:10-cv-05366 RBL,
   2012 WL 2030099, *3 (W.D. Wash. June 6, 2012) .................................... 17-18

*Allstate Ins. Co. v. Steele*,
74 F.3d 878 (8th Cir. 1996) ........................................................... 26

*Allstate Ins. Co. v. Worthington*,
46 F.3d 1005 (10th Cir. 1995) ............................................. 20, 21, 24

*Auto-Owners Ins. Co. v. Hamin*, 368 S.C. 536,
629 S.E.2d 683 (Ct. App. 2006) .................................................... 19

*Bass v. Isochem*, 365 S.C. 454,
617 S.E.2d 369 (Ct. App. 2005) .................................................... 15

*Bell v. Progressive Direct Ins. Co.*
407 S.C. 565, 757 S.E.2d 399 (2014) ......................................... 22-23

*Berenyi, Inc. v. Landmark Am. Ins. Co.*, C.A. No. 2:09-CV-01556-PMD,
2010 WL 233861 (D.S.C. Jan. 14, 2010) ................................... 13-14

*Bering Strait Sch. Dist. v. RLI Ins. Co.*,
873 P.2d 1292 (Ala. 1994) ........................................................... 22

*B.L.G. Enters., Inc. v. First Fin. Ins. Co.*,
514 S.E.2d 327 (S.C. 1999) ......................................................... 14

*Blum v. Bacon*, 457 U.S. 132,
102 S. Ct. 2355 (1982) ................................................................ 27

*Castro v. Allstate Ins. Co.*,
855 F. Supp. 1152 (S.D. Cal. 1994) ......................................... 19, 26

*Couch v. Jabe*, 679 F.3d 197 (4th Cir. 2012) .................................... 13

*C.P. v. Allstate Ins. Co.*,
996 P.2d 1216 (Alaska 2000) .................................................. 20, 22

*Dilmar Oil , Inc. v. Federated Mut. Ins. Co*,
986 F. Supp. 959 (D.S.C. 1997) ................................................... 14

*Doe v. Northwestern Mut. Life Ins. Co.*, Civil No. 2:10-cv-2961, 2012 WL
2405510, *6 (D.S.C. June 26, 2012) ............................................ 23

*Dooley v. Hartford Acc. & Indem. Co.*,
716 F.3d 131 (4th Cir. 2013) ....................................................... 13

*Engineered Prods., Inc. v. Aetna Cas. & Sur. Co.*, 295 S.C. 375, 378, 368
    S.E.2d 674, 676 (Ct. App. 1988) ................................... 24

*Ex Parte: United States Servs. Auto. Ass'n v. Moore*, 365 S.C. 50, 55, 614
    S.E.2d 652, 654 (Ct. App. 2005) .................................. 23

*Goldston v. State Farm Mut. Auto. Ins. Co.*,
    594 S.E.2d 511 (S.C. App. 2004) .............................. 33-34

*Keely v. Fire Ins. Exch.*,
    833 F. Supp.2d 722 (E.D. Mich. 2011) .......................... 31

*Mailhiot v. Nationwide Mut. Fire Ins. Co.*,
    740 A.2d 360, 363 (Vt. 1999) ................................... 32

*Marrero v. Corp. de Renovacion Urbana y Vivienda*,
    658 F. Supp. 443 (D. Puerto Rico 1987) ......................... 25

*McCracken v. Gov't Employees Ins. Co.*,
    325 S.E.2d 62 (1985) ......................................... 32-33

*McKinnon v. Lincoln Benefit Life Co.*,
    162 Fed.Appx. 223 (4th Cir. 2006) ............................. 15

*McPherson v. Michigan Mut. Ins. Co.*,
    310 S.C. 316, 426 S.E.2d 770 (1993) ........................ 31, 33

*Mize v. Travelers Cas. Co. of Conn.*, Civil Action No. 4:09-cv-0076-TLW-
    TER, 2011 WL 891322 (D.S.C. Mar. 10, 2011) .................. 23

*M&M Corp. of S.C. v. Auto-Owners Ins. Co.*, 390 S.C. 255,
    701 S.E.2d 33 (2010) ......................................... 13

*Moyer v. Allstate Ins. Co.*, No. 3:09-CV-1290,
    2010 WL 3328035 (M.D. Pa. Aug. 20, 2010) ................... 18

*Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*,
    738 F.3d 95 (4th Cir. 2013) ................................... 13

*Safeco Ins. Co. of America v. White*,
    913 N.E.2d 426 (Ohio 2009) .................................. 37

*S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*,
    638 S.E.2d 103, 104 (Ct. App. 2006) ........................................27-28

*S.C. Farm Bureau Mut. Ins. Co. v. Kelly*, 345 S.C. 232, 547 S.E.2d 871
    (Ct. App. 2001) ...................................................................... 31, 32

*S.C. Ins. Co. v. White*, 301 S.C. 133,
    390 S.E.2d 471 (Ct. App. 1990) ................................................... 14

*Scott v. U.S.*, 328 F.3d 132 (4th Cir. 2003) ........................................ 27

*Sphere Drake Ins. Co. v. Litchfield*, 313 S.C. 471,
    438 S.E.2d 275 (Ct. App. 1993) ..............................................38-39

*State Farm Fire & Cas. Co. v. Mitchell*, Op No. 98-UP-100 (S.C. Ct. App.
    Feb. 19, 1998) ...................................................................... 31, 32

*St. Paul Reinsurance Co., Ltd. v. Riviello*,
    296 Fed.Appx. 377 (4th Cir. 2008) .........................................38-39

*Taylor v. Am. Fire & Cas. Co.*,
    925 P.2d 1279 (Utah App. 1996) .............................................39-40

*Torrington Co. v. Aetna Cas. & Sur. Co.*,
    216 S.E.2d 547 (S.C. 1975) ........................................................ 14

*Travelers Ins. Co. v. Blanchard*,
    431 So.2d 913 (La. App. 1983) .................................................... 30

*Wasik v. Allstate Ins. Co.*,
    813 N.E.2d 1152 (Ill. App. 2004) ................................................. 20

*Whitlock v. Stewart Title Guar. Co.*, No. 27169, 2012 WL 4013558
    (S.C. Sept. 12, 2012) ................................................................. 13

## FEDERAL RULES

Fed. R. App. P. 4(a)(1)(A) ................................................................... 2

Fed. R. App. P. 28.1(e)(2) ................................................................ 42

Fed. R. App. P. 32(a)(5) ................................................................... 42

Fed. R. App. P. 32(a)(6) .................................................................. 42

Fed. R. App. P. 32(a)(7)(B)(iii) ...................................................... 42

Fed. R. Civ. P. 56(a) ...................................................................... 13, 14

STATUTES

28 U.S.C. § 1291 ............................................................................. 2

28 U.S.C. § 1332 ............................................................................. 1

S.C. Code Ann. § 63-5-70 ........................................................... 3, 34-35

S.C. Code Ann. § 63-7-20 ............................................................. 35

# JURISDICTIONAL STATEMENT

The district court exercised subject matter jurisdiction over this insurance coverage dispute under 28 U.S.C. § 1332. The plaintiff, Allstate Indemnity Company ("Allstate"), is an Illinois citizen; defendant AmyMelissa Davis, Individually and as Legal Guardian for K.K., ("Davis"), is a Florida citizen; defendants Roosevelt Tilmon and Mona Tilmon are South Carolina citizens; and the amount in controversy exceeds $75,000.00.

On March 21, 2014, the district court disposed of all claims in this action by granting Allstate's motion for summary judgment on both Allstate's Complaint and Davis' counterclaim and declaring that the policy of insurance issued to Roosevelt Tilmon by Allstate does not provide coverage for either Roosevelt Tilmon or Mona Tilmon and that Allstate does not have a duty to either defend or indemnify them in connection with the matter styled *AmyMelissa Davis, Individually and as Legal Guardian for K. K., a minor v. Roosevelt Tilmon, Mona Tilmon*, C.A. No. 2012-CP-02-02369, brought in the Court of Common Pleas for Aiken County, South Carolina ("Underlying Lawsuit"). The district court also granted Allstate's Motion for Default Judgment as to Roosevelt Tilmon and Mona Tilmon on April 21, 2014.

Davis appealed on April 21, 2014.  This Court's jurisdiction thus rests on 28 U.S.C. § 1291, and this appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Whether the district court correctly determined that the joint obligations provision of Deluxe Homeowners Insurance Policy No. 9 30 260240 01/26 ("the Policy"), issued to Roosevelt Tilmon for the January 26, 2009 to January 26, 2010 policy period, operates to preclude coverage for the insureds, Roosevelt Tilmon and Mona Tilmon, for claims arising out of the sexual assault committed by another insured, Anthony Curtis Tilmon?

II.   As an alternative sustaining ground, does the Policy's exclusion for the intentional or criminal acts of "any insured" bar coverage for Roosevelt Tilmon and Mona Tilmon?

III.  As an alternative sustaining ground, does the Policy's exclusion for intentional or criminal acts bar coverage for the criminal acts of Roosevelt Tilmon and Mona Tilmon as governed by South Carolina Code of Laws 63-5-70?

IV.   As an alternative sustaining ground, do the claims against Roosevelt Tilmon and Mona Tilmon fail to constitute an "occurrence" as defined by the Policy?

## STATEMENT OF THE CASE

This appeal arises out of a declaratory judgment action in which Allstate sought a declaration from the court regarding whether the Policy issued to Roosevelt Tilmon provided coverage for Davis' claims against Roosevelt Tilmon and Mona Tilmon in the Underlying Lawsuit.[1]  In March 2009 and April 2009, Anthony Curtis Tilmon, Roosevelt Tilmon's grandson and a resident of the home insured under the Policy, engaged in a pattern of sexual abuse of the minor child. Anthony Curtis Tilmon was arrested and found guilty of Criminal Sexual Conduct with a Minor, 1st Degree and is currently serving a thirty-five year prison sentence. Davis filed the Underlying Lawsuit seeking damages arising out of Anthony Curtis Tilmon's sexual abuse of the minor.

Following filing of the Underlying Lawsuit, Allstate received notice and defended Roosevelt Tilmon and Mona Tilmon under a reservation of rights. Allstate filed the present declaratory judgment action in the United States District Court for the District of South Carolina seeking a determination regarding whether Allstate had a duty to defend or indemnify Roosevelt Tilmon or Mona Tilmon in connection with the claims related to and arising out of the actions alleged in the Underlying Lawsuit.

---

[1] Anthony Curtis Tilmon was not named as defendant to the declaratory judgment action because Allstate denied coverage to him for the minor child's injuries because the acts did not constitute an "occurrence" under the Policy and because coverage was excluded by the Policy's exclusion for intentional or criminal acts.

Allstate filed a motion for summary judgment. The district court granted Allstate's motion, finding that the Policy did not provide coverage. Davis subsequently filed this appeal.

## STATEMENT OF FACTS

### A.    Underlying Lawsuit

In May 2008, Davis moved to Aiken, South Carolina to care for her ailing, elderly mother. [JA16; JA146] During this time, she became friends with Mona Tilmon. [JA17; JA146] Because Davis worked during the day, Mona Tilmon volunteered to take care of the minor child while Davis was at work. [JA17; JA146] In March 2009, the minor child began staying with Mona Tilmon at the home located at 1001 Northbrook Drive in Aiken, South Carolina. [JA17; JA146] At the time Mona Tilmon cared for the minor child, the other residents of the home included Roosevelt Tilmon and Anthony Curtis Tilmon. [JA17; JA146]

On three occasions between March 25, 2009 and April 12, 2009, Anthony Curtis Tilmon engaged in the sexual battery of the minor child while she was in the care of Mona Tilmon. [JA17-18; JA147-148] Following a jury trial, Anthony Curtis Tilmon was found guilty of three counts of Criminal Sexual Conduct with a Minor, 1st Degree.[2] [JA19; JA148] He is currently serving a

---

[2] In Davis' brief, she contends that the minor child "suffered bodily injury on three separate occurrences." [Doc. 24, p. 12] However, the district court found that the "negligent acts of Roosevelt Tilmon and Mona Tilmon are **an** occurrence under the

thirty-five year prison sentence.  [JA19; JA148]

On September 10, 2013, Davis filed an Amended Complaint.  [JA145]  In the Amended Complaint, Davis includes only two causes of action against Roosevelt Tilmon and Mona Tilmon for negligence, including gross negligence and recklessness, and breach of fiduciary duty.  [JA150-152]  In support of her causes of action for negligence/gross negligence/recklessness, Davis contends, among other things, that Roosevelt Tilmon and Mona Tilmon failed to monitor the behavior of Anthony Curtis Tilmon; knew or should have known about Anthony Curtis Tilmon's sexual proclivities towards children and still allowed him to be alone with the minor child; failed to fulfil their duties *in loco parentis* to the minor child; and failed to supervise Anthony Curtis Tilmon to eliminate his chances of sexually abusing the minor child.  [JA150-151]  With regard to the cause of action for breach of fiduciary duty, Davis contends that Roosevelt Tilmon and Mona Tilmon assumed a duty to act *in loco parentis* and to provide a safe environment for the minor child.  [JA151]  Davis contends that Roosevelt Tilmon and Mona Tilmon breached their duty to the minor child by failing to protect her

---

Tilmon Policy."  Therefore, the district court determined there was only one occurrence under the Policy.  Davis did not identify this as an issue on appeal, and therefore, this issue is not properly before the Court.  [Doc. 10].  Even if this issue were properly before this Court, the Policy plainly and unambiguously states that bodily injury "resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence."  [JA89-90]

from Anthony Curtis Tilmon's predatory conduct.  [JA152]  Davis removed

Anthony Curtis Tilmon as a defendant.  [JA145; JA170]

**B.    The Policy**

Allstate issued the Policy to Roosevelt Tilmon for the January 26, 2009 to

January 26, 2010 policy period.  [JA35]  The Policy contains several definitions for

terms used throughout the Policy:

> *Definitions Used in This Policy*
>
> 1. "**You**" or "**your**"—means the person named on the policy Declarations as the insured and that person's resident spouse.
>
>               ****
>
> 3. "**Insured person(s)**"—means **you** and, if a resident of **your** household:
>
>    a) any relative; and
>    b) any dependent person in **your** care.
>
>               ****
>
> 9. "**Occurrence**"—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

[JA68-69]  Further, the Policy's Insuring Agreement provides:

> In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations.  In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

-7-

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

[JA69-70]

The Policy contains coverages X, Family Liability and Guest Medical Protection, and Y, Guest Medical Protection. The Policy provides under coverage X that:

Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

[JA85]   The Policy also contains a number of exclusions under coverage X including:

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result

-8-

from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

a) such **insured person** lacks the mental capacity to govern his or her conduct;

b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

[JA85]  Coverage Y contains a similar exclusion:

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

a) such **insured person** lacks the mental capacity to govern his or her conduct;

b) such **bodily injury** is a different kind or degree than intended or reasonably expected; or

c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

[JA87]

## C.    The Declaratory Judgment Action

Allstate filed this declaratory judgment action on March 14, 2013, seeking a determination from the court regarding whether Allstate has a duty to defend or indemnify Roosevelt Tilmon and Mona Tilmon in connection with the claims related to and arising out of the actions alleged in the Underlying Lawsuit. [JA2; JA6-94]  Davis answered the Declaratory Judgment Complaint on April 10, 2013.

-9-

[JA2; JA95-102]   Neither Roosevelt Tilmon nor Mona Tilmon answered or otherwise responded to the Declaratory Judgment Complaint and the Clerk of Court entered default against them on May 6, 2013.  [JA3]  On March 24, 2014, Allstate filed a Motion for Default Judgment as to Roosevelt Tilmon and Mona Tilmon, and the district court granted the motion on April 21, 2014.  [JA3]

Allstate filed its Motion for Summary Judgment on August 26, 2013.  [JA4; JA101-123]   Davis filed her response in opposition to Allstate's motion on September 12, 2013.  [JA4; JA124-152]   Allstate filed a reply in support of its motion and in response to Davis' response on September 23, 2013.  [JA4; JA153-166]

In an Opinion and Order dated March 21, 2014, the district court granted Allstate's motion.  [JA167-180]  The district court stated that the allegations against Roosevelt Tilmon and Mona Tilmon in the Underlying Lawsuit were for negligent conduct and not intentional conduct and therefore constituted an "occurrence" under the Policy.  [JA177]  However, in determining whether the Policy provided coverage, the district court determined that the Policy's joint obligations provision attributed the sexual battery committed by Anthony Curtis Tilmon on the minor child to Roosevelt Tilmon and Mona Tilmon.  [JA178-179]  Ultimately, the district court declared that the Policy does not provide coverage for the claims asserted in the Underlying Lawsuit and that Allstate does not have a

duty to defend or indemnify either Roosevelt Tilmon or Mona Tilmon in connection with the Underlying Lawsuit.  [JA179-180]

## SUMMARY OF ARGUMENT

The Policy does not afford coverage to either Roosevelt Tilmon or Mona Tilmon in connection with the Underlying Lawsuit, and the district court's grant of Allstate's motion for summary judgment should be affirmed.  Without dispute, Anthony Curtis Tilmon's sexual molestation of the minor child is not an "occurrence" under the Policy and constitutes both an intentional act and a criminal act.  Therefore, the Policy clearly does not provide coverage for Anthony Curtis Tilmon's acts.  Accordingly, the Policy's clear and unambiguous language also *clearly* precludes coverage for Roosevelt Tilmon and Mona Tilmon. The Policy's joint obligations provision *clearly* provides that Anthony Curtis Tilmon's acts are binding upon Roosevelt Tilmon and Mona Tilmon, the other insureds under the Policy.  Because these acts are binding upon them, coverage is likewise precluded and excluded under the Policy such that Allstate has no duty to defend or indemnify Roosevelt Tilmon and Mona Tilmon in connection with the Underlying Lawsuit.

In addition, the Policy's intentional or criminal act exclusion and joint obligations provision preclude coverage for negligence allegations against Roosevelt Tilmon and Mona Tilmon arising out of Curtis Tilmon's acts.  The

-11-

intentional or criminal acts exclusion specifically provides that coverage is excluded for bodily injury "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, *any* insured person." (emphasis added). Because Anthony Curtis Tilmon is an insured person under the Policy, coverage is not afforded to any insured for the bodily injury caused by his criminal acts or omissions. Further, the joint obligations provision provides that Anthony Curtis Tilmon's acts are binding upon Roosevelt Tilmon and Mona Tilmon, the other insureds under the Policy. Because these acts are binding upon them, coverage is likewise precluded and excluded under the Policy such that Allstate has no duty to defend or indemnify Roosevelt Tilmon and Mona Tilmon in connection with the Underlying Lawsuit.

Furthermore, the Policy excludes coverage for Roosevelt Tilmon and Mona Tilmon as a result of their own criminal acts. Section 63-4-70 of the South Carolina Code of Laws criminalizes the conduct complained of in Davis' Amended Complaint. Therefore, because the allegations against Roosevelt Tilmon and Mona Tilmon are criminal in nature, such actions are excluded under the Policy. Accordingly, the Policy does not provide coverage.

Finally, the Policy does not provide coverage to Roosevelt Tilmon and Mona Tilmon because the Underlying Lawsuit fails to allege an "occurrence." As stated above, Anthony Curtis Tilmon's sexual abuse of the minor child is not

considered an "occurrence" under South Carolina law. Because Roosevelt Tilmon and Mona Tilmon's allegedly negligent acts would not be actionable absent Anthony Curtis Tilmon's sexual abuse of the minor child, the claims are necessarily derivative of the intentional acts such that there is no "occurrence" under the Policy. As a result, coverage is not available under the Policy for Roosevelt Tilmon and Mona Tilmon.

## ARGUMENT

### A.    Standard of Review

This Court "review[s] a district court's grant of a summary judgment de novo." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 101 (4th Cir. 2013). In addition, this Court "will also review de novo a district court's decision on an issue of contract interpretation." *Perini/Tompkins*, 738 F.3d at 101. "Summary judgment is appropriate when the record does not disclose a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Dooley v. Hartford Acc. & Indem. Co.*, 716 F.3d 131 (4th Cir. 2013) (citing *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012) *and* Fed. R. Civ. P. 56(a)).

Under South Carolina law, "'insurance policies are subject to the general rules of contract construction.'" *Whitlock v. Stewart Title Guar. Co.*, No. 27169, 2012 WL 4013558, at * 2 (S.C. Sept. 12, 2012) (quoting *M&M Corp. of S.C. v. Auto-Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010)). "An

insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction." *Berenyi, Inc. v. Landmark Am. Ins. Co.*, C.A. No. 2:09-CV-01556-PMD, 2010 WL 233861, at * 3 (D.S.C. Jan. 14, 2010) (citing *S.C. Ins. Co. v. White*, 301 S.C. 133, 390 S.E.2d 471 (Ct. App. 1990)).  "South Carolina law requires that if a policy's language is unambiguous, the language alone determines the policy's force and effect, and each term within the insurance policy must be given its intended purpose." *Dilmar Oil, Inc. v. Federated Mut. Ins. Co*, 986 F. Supp. 959, 978 (D.S.C. 1997) (citing *Torrington Co. v. Aetna Cas. & Sur. Co.*, 216 S.E.2d 547, 550 (S.C. 1975)). Further, "[i]f the intention of the parties is clear, [] courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *Berenyi, Inc.*, 2010 WL 233861, at *3.  *See also B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999) ("When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used.").

Davis contends that "the district court incorrectly applied the requirements of Rule 56 of the Federal Rules of Civil Procedure to Allstate's Motion for Summary Judgment." [Doc. 24, p.8]  Davis is mistaken.  There are no material facts in dispute in this case, and the only issue is whether the Policy provides coverage for Roosevelt Tilmon and Mona Tilmon in connection with the

Underlying Lawsuit, which is purely a question of law. *See McKinnon v. Lincoln Benefit Life Co.*, 162 Fed.Appx. 223, 227 (4th Cir. 2006) (affirming the district court's determination and explaining that "there are no material facts in dispute in this case[, and t]he only remaining question is whether [the insurer] is entitled to judgment as a matter of law on the validity of the policy's suicide exclusion.").

**B.**     **The district court correctly determined that the Policy's joint obligations provision applies to preclude coverage under the Policy for Roosevelt Tilmon and Mona Tilmon.**

The Policy includes a joint obligations provision that provides that the acts of one person defined as an insured person under the Policy will be binding upon another insured person under the Policy.  While South Carolina courts have not yet specifically considered this provision, other jurisdictions have considered joint obligations provisions in other policies and have examined the impact the actions of one insured has on the coverage available under the Policy for other insureds. The district court properly analyzed and considered these decisions in reaching the determination that the joint obligations provision precluded coverage for Roosevelt Tilmon and Mona Tilmon. *See Bass v. Isochem*, 365 S.C. 454, 478, 617 S.E.2d 369, 381 (Ct. App. 2005), cert. granted ("When there is no case on point in South Carolina, our courts may look to other states to determine if the issue has been decided and if the decision is persuasive authority.").

**1.    The district court correctly adopted the reasoning of the line of cases determining that the plain, unambiguous language of the joint obligations provision operates to preclude coverage.**

The district court adopted the reasoning of several jurisdictions in which the courts found "that the language in the joint obligations provision is plain and unambiguous—where one insured's acts excluded coverage, those acts are binding upon the other insured and preclude coverage for any claims against the other insured as well."   [JA179]   The district court's interpretation of the joint obligations provision is correct and should be affirmed.

The district court relied upon the reasoning employed by a number of courts in reaching its determination.  For example, the district court considered the court's reasoning in *Allstate Insurance Company v. Berge*, 522 F. Supp.2d 1180 (D.N.D. 2007).  The *Berge* court considered an identical joint obligations provision and determined that coverage was not available under the policy.  Allstate brought a declaratory judgment action to determine whether it owed a duty to defend and/or indemnify the insureds against a negligence action brought by the parents of a guest of the insureds who was killed by the insureds' son.  The policy included the following provision:

> The terms of this policy impose *joint obligations on persons defined as an insured person*.  This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

-16-

*Berge*, 522 F. Supp.2d at 1184 (emphasis added by court).

In analyzing how to apply the provision, the *Berge* court considered decisions issued by other jurisdictions that also construed the joint obligations provision. For example, the court analyzed the decision issued in *Allstate Insurance Company v. Blount*, 491 F.3d 903 (8th Cir. 2007), in which the *Blount* court interpreted the same joint obligations provision. In *Blount*, Allstate brought a declaratory judgment action to determine whether claims brought against one of the insureds for negligence would be barred as a result of the criminal acts of another insured. The *Berge* court noted that in *Blount*, the "Eighth Circuit held that the negligence claims were specifically excluded by the criminal acts exclusion of the policy" and explained that the underlying criminal act provided the basis for the claims related to negligence. *Berge*, 522 F. Supp.2d at 1185. Further, the court explained:

> Other jurisdictions have followed the logic and rationale of the Eighth Circuit, have interpreted policy language identical to that in this case, and have held that the joint obligation provision of the Allstate insurance policy renders the criminal acts exclusion applicable to claims against all other insured persons. *See Allstate Ins. Co. v. Ervin*, No. Civ. A. 05-02800, 2006 WL 2372237, (E.D.Pa., August 14, 2006); *Allstate Ins. Co. v. Grimes*, Case No. M2003-01542-COAR3-CV, 2004 WL 2533826 (Tenn.Ct.App.2004).

*Id.* at 1187. *See also Allstate Indem. Co. v. Riverson*, No. 3:10-cv-05366 RBL, 2012 WL 2030099, *3 (W.D. Wash. June 6, 2012) ("Finally, because [the daughter] is an insured person under the policy and her acts are excluded from

-17-

coverage, the joint obligations clause applies.  This clause holds [the insured mother] responsible for the acts of her daughter and also excluded from coverage."); *Moyer v. Allstate Ins. Co.*, No. 3:09-CV-1290, 2010 WL 3328035, *8 (M.D. Pa. Aug. 20, 2010) ("[T]he policy clearly and unambiguously imposed upon [the son] and his mother joint obligations.  Therefore, we are constrained to conclude that [the insured mother] is not entitled to recover under the policy."); *Ervin*, 2006 WL 2372237, at *5 ("Thus, the joint obligations clause attributes the simple assault committed by Doug Ervin and Daniel Ervin to William and Wilma Ervin, and Allstate does not have a duty to defend the Ervins pursuant to the criminal acts exclusion."); *Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 781-782 (Tenn. App. 1999) (explaining that "[s]everal other courts in other jurisdictions have examined situations involving intentional acts by one insured and allegations of negligence by another insured and have concluded that the determination of whether the policy precludes coverage for the action brought against the insureds turns on whether the policy imposes a joint obligation between insureds and the insurer or whether the policy was several, creating a separate contract with each insured…[and t]he policy language in the instant case specifically excluded coverage for intentional criminal acts of any insured person."); *Allstate Ins. Co. v. Pond Bar*, Civ. No. 3-94-1310m 1995 WL 568399 at *11 (D. Minn. May 19, 1995) ("The Court finds that the joint obligation provision is plain and unambiguous –

where one insured's acts excluded coverage, those acts are binding upon the other insured and preclude coverage or any claims against the other insured as well."); *Castro v. Allstate Ins. Co.*, 855 F. Supp. 1152, 1154-55 (S.D. Cal. 1994) ("Because Carmelita Cook's alleged liability in the underlying Castro lawsuit arose out of the criminal and/or intentional acts of Ariel Cook—an 'Insured Person' under the Policy—the court determines the Policy did not provide coverage as a matter of law."); *and Allstate Ins. Co. v. Lobracco*, Nos. 92AP-649, 92AP-650, 1992 WL 356270, at *3-4 (Ohio Ct. App. Nov. 24, 1992) (determining "the insurance contract precludes coverage for all insureds if the actual damages occur as a result of one insured's intentional acts, the trial court was correct in ruling that no coverage or right to a defense was applicable for Dorothy Freeman.").

The district court correctly determined that the Policy's joint obligations provision operates to render any provision of the Policy applicable to all claims against all insureds. There is no question that Anthony Curtis Tilmon is an insured under the Policy. *See Auto-Owners Ins. Co. v. Hamin*, 368 S.C. 536, 540, 629 S.E.2d 683, 685 (Ct. App. 2006) ("Under the plain terms of the policy, Grant was an insured as she is Hamin's relative and a resident of the household."). As an insured, Anthony Curtis Tilmon's acts are binding upon Roosevelt Tilmon and Mona Tilmon and those acts will determine whether Allstate had a duty to defend Roosevelt Tilmon and Mona Tilmon in connection with the Underlying Lawsuit.

-19-

Because Anthony Curtis Tilmon's acts do not constitute an "occurrence" under the Policy, no coverage is available for the claims against Roosevelt Tilmon and Mona Tilmon. Further, because coverage is excluded for Anthony Curtis Tilmon's criminal and intentional acts, coverage is likewise excluded for Roosevelt Tilmon and Mona Tilmon under the Policy's joint obligations provision. Therefore, the district court correctly determined that Allstate has no duty to defend or indemnify Roosevelt Tilmon and Mona Tilmon in connection with the Underlying Lawsuit.

### 2.     The district court correctly determined that the reasoning in the cases relied upon by Davis did not apply.

The district court correctly declined to adopt the reasoning employed by the cases relied upon by Davis. In support of her contention that the joint obligations provision does not apply to preclude coverage, Davis relies on the courts' decisions in *C.P. v. Allstate Insurance Company*, 996 P.2d 1216 (Alaska 2000), and *Allstate Insurance Company v. Worthington*, 46 F.3d 1005 (10th Cir. 1995).[3] While the courts in these cases found coverage for the insureds under their various policies, these cases do not lend support to Davis' arguments, because none of these cases

---

[3] Davis also relies on *Wasik v. Allstate Insurance Company*, 813 N.E.2d 1152 (Ill. App. 2004), which the district court specifically stated that it would not rely upon. The district court explained that, like the *Berge* court, it was not going to adopt the *Wasik* court's reasoning. The district court's refusal to adopt the *Wasik* court's reasoning was proper because that decision is easily distinguished from the current declaratory judgment action. In that case, the issue was whether the policy provided coverage for a fire loss to the insured's home and fell within a different coverage part under the policy.

were decided upon recognized principles of South Carolina insurance law and fail to apply the plain, unambiguous language of the joint obligations provision.

### a. South Carolina has rejected the doctrine of reasonable expectations for unambiguous policy language.

The court in *Worthington*, applying Utah law and under the operative policy language, determined that coverage existed under the policy for the wife for injuries sustained when her husband kidnapped hostages at a hospital and shot and killed a nurse. The policy at issue contained a "joint obligations clause," which provided "[t]he terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person." *Worthington*, 46 F.3d at 1009. The court stated "that in any event a *reasonable* insured would not understand a 'joint obligations' clause to exclude liability coverage for all insureds when coverage was excluded for one insured." The court determined that the exclusionary provisions of the policy, which contained language different from the policy issued to Roosevelt Tilmon, rendered the policy ambiguous and that "[i]f Allstate wants its homeowner's insurance policies to exclude coverage for all insured persons for an excluded act by any insured person, it can do so by careful drafting." *Id.* at 1010.

In *C.P. v. Allstate Insurance Company*, the court also determined that coverage was available under Alaska state law based on the policy language at issue. The court explained that coverage was available for the parents of a child who assaulted a minor. Central to its determination was the court's reasoning that "because an insurance policy is a contract of adhesion, we construe it to give effect to the insured's reasonable expectations" and that "[i]n other words, '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'" *C.P.*, 996 P.2d at 1222 (quoting *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Ala. 1994)).

As illustrated above, the cases Davis relies upon consider the insured's reasonable expectations regarding whether coverage will be available to them under the Policy. Such a view has been soundly rejected in South Carolina in interpreting a policy that has clear, unambiguous language. In fact, the Supreme Court of South Carolina this year addressed the operation of the doctrine of reasonable expectations. In *Bell v. Progressive Direct Insurance Company*, 407 S.C. 565, 757 S.E.2d 399 (2014), the court determined that it would "decline to apply the doctrine [of reasonable expectations] where a contract of insurance unambiguously denies coverage under its plain terms." *Bell*, 407 S.C. at 579, 757

-22-

S.E.2d at 406.  Further, the *Bell* court explained that South Carolina "jurisprudence does not support the creation of a substantive right in reasonable expectations." *Id.*, 757 S.E.2d at 406.  Finally, the *Bell* court held that the reasonable expectations doctrine could not "be used to alter the plain terms of an insurance policy."  *Id.* at 581, 757 S.E.2d at 407.  *See also Doe v. Northwestern Mut. Life Ins. Co.*, Civil No. 2:10-cv-2961, 2012 WL 2405510, *6 (D.S.C. June 26, 2012) ("South Carolina has not adopted the doctrine of 'reasonable expectations' in construing insurance policies."); *Mize v. Travelers Cas. Co. of Conn.*, Civil Action No. 4:09-cv-0076-TLW-TER, 2011 WL 891322 (D.S.C. Mar. 10, 2011) ("Plaintiff urges the court to adopt the Doctrine of Reasonable Expectations in construing the Policy.  However, this doctrine has been rejected in South Carolina and this court finds no reason to conclude that South Carolina courts would choose to adopt it in the present case."); *Ex Parte: United States Servs. Auto. Assoc. v. Moore*, 365 S.C. 50, 55, 614 S.E.2d 652, 654 (Ct. App. 2005), *cert. denied*, (explaining that the doctrine of reasonable expectations "has been rejected in South Carolina."); *and Allstate Ins. Co. v. Mangum*, 299 S.C. 226, 231, 383 S.E.2d 464, 467 (Ct. App. 1989) (rejecting the doctrine of reasonable expectations and explaining "[t]his view has never been accepted by the Supreme Court of this State.  In South Carolina insurance policies are subject to the general rules of contract construction.").

The language of the Policy is clear and unambiguous. Unlike the policy at issue in *Worthington*, the terms of the joint obligations provision in the Policy issued to Roosevelt Tilmon when read in connection with the terms of the intentional or criminal acts exclusion does not render the Policy's language ambiguous. *See Worthington*, 46 F.2d at 1009 ("All of these cases [relied on by Allstate] dealt with language that excluded coverage to 'an insured,' which the court read as 'any insured.' We do not know why the Allstate policies differ. But we must deal with the particular policy and the specific language at issue before us."). Furthermore, just because a small minority of the jurisdictions addressing the joint obligations provision has found it to be ambiguous under the facts of those particular cases does not mean this Court has to as well, especially when South Carolina law does not mandate such a determination. *See Engineered Prods., Inc. v. Aetna Cas. & Sur. Co.*, 295 S.C. 375, 378-379, 368 S.E.2d 674, 676 (Ct. App. 1988) (stating the court was "not persuaded" by insured's argument that the court "'must give substantial, if not conclusive, weight to the opinions of the at least 57 judges in this country who believe that [E]xclusion (a) does create an ambiguity to coverage for claims arising from damage to the insured's work product.'"). Therefore, the district court's determination should be affirmed.

**b.    The "joint obligations" provision does more than require that other insureds comply with policy obligations, such as payment of premiums.**

The joint obligations provision at issue provides, in pertinent part:

> This means that the ***responsibilities, acts and failures to act*** of a person defined as an insured person will be binding upon another person defined as an insured person.

[JA70] (emphasis added).   The plain, unambiguous language of this provision clearly demonstrates that it speaks to more than "responsibilities" and provides that the "acts" of one insured person are binding on other insured persons. Furthermore, the joint obligations language appears in the Insuring Agreement in the general policy provisions, which applies to the entire Policy.[4]   *See Marrero v. Corp. de Renovacion Urbana y Vivienda*, 658 F. Supp. 443, 445 (D. Puerto Rico 1987) ("The insuring agreement in a policy is the 'heart of the policy' and defines in general terms the events to which coverage applies.").   Therefore, Davis' argument that the joint obligations provision does not apply to later coverages under the Policy lacks a legitimate basis.

---

[4] Specifically, Davis contends that the placement of the joint obligations in the policy's Insuring Agreement somehow negates its application to the coverage provided under "Section 2—Family Liability and Guest Medical Protection; Coverage X; Family Liability Protection" of the policy.  Davis argues that applying the joint obligations provision to this portion of the policy "would render the reference to 'this part of the policy' meaningless."  [Doc. 24, p. 20-21]  Clearly, Davis misunderstands the purpose of the Policy's Insuring Agreement.

The joint obligations provision absolutely precludes coverage for claims against *every* insured person for liability arising from harm directly attributable to the intentional or criminal act of other insured persons under the Policy. *See Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881 (8th Cir. 1996) (Allstate's joint obligation clause operates to exclude coverage for negligent supervision claims for injuries arising from sexual molestation of a minor by an insured person) *and Castro*, 855 F. Supp. at 1154-55 (the joint obligations provision expressly imposes joint obligations on all insured persons so that the exclusion based on one insured's criminal conduct operated to exclude coverage for that loss for all insured persons).

Because the joint obligations provision operates to bind the acts of Anthony Curtis Tilmon with regard to the sexual abuse of the minor child on the other insureds under the Policy, Roosevelt Tilmon and Mona Tilmon, there can be no coverage for the Underlying Lawsuit. Allstate has previously denied coverage for Anthony Curtis Tilmon because his actions do not constitute an "occurrence" as defined by the Policy and because his acts are excluded under the Policy's criminal or intentional acts exclusion. There is no question that the Policy does not provide coverage for Anthony Curtis Tilmon, and accordingly, there can be no question that the joint obligations provision, likewise, operates to provide no coverage for either Roosevelt Tilmon or Mona Tilmon. The plain language of the Policy clearly demonstrates that there is no coverage for losses arising from

excluded conduct by **any** insured and, as explained above, employing an analysis to determine the reasonable expectations of an insured is not the law in South Carolina. Accordingly, the district court's finding of no coverage under the Policy should be affirmed.

### C. The Policy's exclusion for intentional or criminal acts committed by "any insured" bars coverage under the Policy.

On appeal, this Court may affirm the grant of summary judgment "on any ground appearing in the record, including theories not relied upon or rejected by the district court." *Scott v. U.S.*, 328 F.3d 132, 137 (4th Cir. 2003). *See also Blum v. Bacon*, 457 U.S. 132, 138, 102 S. Ct. 2355, 2359, n. 5 (1982) ("It is well accepted [] that without filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below.") Because the district court granted Allstate's summary judgment motion based on the Policy's joint obligations provision, the court did not need to address the Policy's intentional or criminal acts exclusion. The application of the Policy's exclusion for intentional or criminal acts of "any insured" also provides a basis upon which this Court may affirm the district court's grant of summary judgment in Allstate's favor.

Under South Carolina law, "[a]lthough exclusions in a policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public

policy or a statutory prohibition." *S.C. Farm Bureau Mut. Ins. Co. v. Dawsey*, 638 S.E.2d 103, 104 (Ct. App. 2006). Furthermore, "[t]he court cannot torture the meaning of policy language to extend coverage not intended by the parties." *Dawsey*, 371 S.C. at 356, 638 S.E.2d at 105.

The language of the Policy expressly provides that coverage is not available for "any bodily injury…intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, ***any insured person***." (emphasis added). Notably, Davis does not contend that the criminal or intentional acts exclusion in the Policy is ambiguous. Anthony Curtis Tilmon is an insured under the Policy. There is no question that Anthony Curtis Tilmon acted both intentionally and criminally in sexually abusing the minor child. Allstate's criminal or intentional act exclusion precludes coverage of negligent supervision claims related to injuries caused by the criminal or intentional acts of any insured person. Based on the clear and unambiguous language of the Policy, coverage is excluded for "bodily injury" resulting from any insured's criminal or intentional acts or omissions. Here, because the claimed damages result from Anthony Curtis Tilmon's intentional and criminal sexual molestation of the minor child, coverage is not available for Roosevelt Tilmon and Mona Tilmon in connection with the Underlying Lawsuit.

The court in *Allstate Insurance Company v. Foster*, 693 F. Supp. 886 (D. Nev. 1988) addressed a similar issue and determined that coverage was not available under the policy for the insureds for the injuries alleged as a result of the sexual assault of a minor.  In *Foster*, Allstate brought a declaratory judgment to determine whether it had a duty to defend the insured husband and wife for the damages alleged in the underlying lawsuit involving the sexual assault of a minor by the insured husband.  The plaintiffs in the underlying lawsuit alleged the insured husband sexually assaulted the minor and that the insured wife knew about the assault and negligently failed to warn, disclose, or otherwise protect the minor from the assault.

The court noted that the policy "expressly exclude[d] from coverage for 'any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.'"  *Foster*, 693 F. Supp. at 887.  The court noted that "[t]here [wa]s no factual dispute that the acts alleged to have caused harm to [the minor] were criminal acts."  *Id.* at 888.  The court reasoned that "[s]ince the Allstate Mobilehome Policy excludes coverage for harm resulting from the intentional or criminal 'acts of an insured person,' the insurance policy excludes coverage to any other insureds, such as [the insured wife] for liability arising from the harm which is directly attributable to the intentional or criminal act."  *Id.* at 889.  *See also*

-29-

*Allstate Ins. Co. v. Gilbert*, 852 F.2d 449 (9th Cir. 1988) (emphasis in original) ("We hold that by excluding insurance coverage for injury or damage intentionally caused by 'an insured person,' Allstate unambiguously excluded coverage for damages caused by the intentional wrongful act of *any* insured under the policies.") *and Travelers Ins. Co. v. Blanchard*, 431 So.2d 913, 915 (La. App. 1983) (emphasis in original) ("Here, the exclusion is not restricted to intentional acts of the particular insured sought to be held liable, but broadly excludes coverage for *all intentionally caused* injury or damage by *an insured person*. Therefore, it clearly and unambiguously excluded coverage of the intentional thefts committed by [the son], an insured.").

Furthermore, the allegations in the Underlying Lawsuit contend that Roosevelt Tilmon and Mona Tilmon were negligent in several respects, including in allowing Anthony Curtis Tilmon to be alone with the minor child and in failing to recognize that Anthony Curtis Tilmon would abuse the minor child, and breached their fiduciary duty to provide a safe environment for the minor child. These acts cannot be separated from the criminal and intentional acts of Anthony Curtis Tilmon, because they all arise from and are dependent upon the sexual abuse of the minor child and do not and cannot exist separate and apart from

those acts.[5]  *See Keely v. Fire Ins. Exch.*, 833 F. Supp.2d 722, 728 (E.D. Mich. 2011) ("To the extent that Toth asserts a negligent supervision claim against Mrs. Keely, that claim is also not covered by the insurance policy….[t]he negligence claim is derivative of the claims against Mr. Keely, as Toth alleges that Mrs. Keely are not covered under the policy, the negligent supervision claim is not covered."); *McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 426 S.E.2d 770 (1993) (determining no coverage existed for the negligent training and supervision claims when the policy excluded coverage for injury arising out of the ownership, operation , or use of an automobile and that "[c]learly, without the police officer's negligent operation of the patrol car, there is no link by which Charleston's negligence can be independently connected to [the claimant's] injuries…[and that m]oreover, we agree with the Court of Appeals that the policy excludes coverage for [the] injuries regardless of the legal theory by which they are claimed.");

---

[5] In *S.C. Farm Bureau Mut. Ins. Co. v. Kelly*, 345 S.C. 232, 547 S.E.2d 871 (Ct. App. 2001) the Court of Appeals of South Carolina addressed a similar issue. While noting that the issue regarding whether the plaintiff was an innocent insured entitled to coverage in spite of the intentional acts of his son as an insured under the policy had not been preserved for appeal, the court, in dicta, rejected the argument. The court looked to a previous decision in *State Farm Fire & Cas. Co. v. Mitchell*, Op No. 98-UP-100 (S.C. Ct. App. Feb. 19, 1998) (unpublished) in which the "court held that an innocent co-insured was barred from recovery under the insurance policy because that policy had specific language denying recovery if that insured or any other insured caused or procured the loss for the purpose of obtaining insurance benefits." *Kelly*, 345 S.C. at 240, 547 S.E.2d at 875, n. 4. The court determined that based on this previous decision there would have been no coverage under the policy.

-31-

*Mailhiot v. Nationwide Mut. Fire Ins. Co.*, 740 A.2d 360, 363 (Vt. 1999) (reasoning no coverage existed for the negligent supervision claim when the claimant was injured as a result of using an ATV because the policy excluded damages arising out of the use of the vehicle and that "[i]t is impossible to separate the excluded conduct from any included conduct; therefore, the two causes are not independent of one another and cannot be said to be concurrent."); *and Allstate Ins. Co. v. McCranie*, 716 F. Supp. 1440, 1449 (S.D. Fla. 1989) (emphasis in original) (granting summary judgment in favor of Allstate and reasoning that "[i]t appears to be clear from the policy that injury caused by the intentional acts of *an insured* is excluded from coverage, even though a suit is brought against another insured on a negligence theory."). Therefore, coverage for the Underlying Lawsuit is expressly excluded under the Policy.

Further, while there are no South Carolina cases discussing the specific exclusion found in Allstate's policy, previous decisions by South Carolina appellate courts have found that the "any insured" language precludes first party coverage for co-insureds when another insured intentionally destroys insured property. *See Kelly*, 345 S.C. 232, 547 S.E.2d 871 *and Mitchell*, Op No. 98-UP-100. These cases have specifically found that the term "any insured" constitutes specific policy language, as required by *McCracken v. Government Employees Insurance Company*, 325 S.E.2d 62 (1985), denying coverage to a co-insured

based upon the intentional acts of another insured. Therefore, Allstate's criminal or intentional act exclusion is specific policy language denying coverage to a co-insured.

In addition, South Carolina courts have also held in other situations that derivative negligence claims arising out of excluded causes of injury are not covered. *See McPherson*, 426 S.E.2d 770 *and Goldston v. State Farm Mut. Auto. Ins. Co.*, 594 S.E.2d 511 (S.C. App. 2004). Both of these cases involved use of automobile exclusions. In *Goldston*, the claimants argued that the causes of action against the employer for the negligent hiring and supervision of an employee involved in an automobile accident were unrelated to the use of the auto. However, in rejecting this argument, the court noted that the negligence causes of action against the employer, a separate insured from the employee, were inextricably tied to the injuries caused by the use of the automobile. In short, without the use of the automobile, there would have been no injury. Similarly, without the intentional or criminal acts committed by Anthony Curtis Tilmon there would have been no injury. The *Goldston* court stated,

> Neither of these definitions limits the application of the auto exclusion only to *causes of action* that arise out of the use or entrustment of an auto. Rather, these definitions assure the parties that the auto exclusion applies to all bodily injury and property damage arising out of the use or entrustment of an auto.

*Id.* at 520-521.  Similarly, Allstate's exclusion assures the parties that the criminal or intentional act exclusion applies to all bodily injury or property damage arising out of the criminal or intentional acts of any insured.

The cases discussed above indicate that South Carolina courts would apply the unambiguous criminal or intentional act exclusion to exclude coverage for allegations of negligence against co-insureds arising out of injuries caused by the criminal or intentional acts of another insured.   Anthony Curtis Tilmon is an insured under the Policy, and, therefore, his criminal and intentional acts operate to preclude coverage for co-insureds Roosevelt Tilmon and Mona Tilmon.

**D.    The Policy's exclusion for criminal acts excludes coverage under the Policy based on the criminal acts of Roosevelt Tilmon and Mona Tilmon.**

This Court may also affirm the district court's grant of summary judgment in favor of Allstate because the Policy does not provide coverage for bodily injury that results from the criminal acts of Roosevelt Tilmon and/or Mona Tilmon.  The allegations made against Roosevelt Tilmon and Mona Tilmon in connection with the Underlying Lawsuit are criminal in nature, and the Policy excludes coverage "regardless of whether or not such **insured person** is actually charged with, or convicted of a crime."

Section 63-5-70 of the Code of Laws of South Carolina, provides:

> (A)    It is unlawful for a person who has charge or custody of a child, or who is the parent or guardian of a child, or who is

responsible for the welfare of a child as defined in Section 63-7-20 to:

(1) place the child at unreasonable risk of harm affecting the child's life, physical or mental health, or safety;

(2) do or cause to be done unlawfully or maliciously any bodily harm to the child so that the life or health of the child is endangered or likely to be endangered; or

(3) willfully abandon the child.

A person who violates subsection (A) is guilty of a felony and for each offense, upon conviction, must be fined in the discretion of the court or imprisoned not more than ten years, or both.

The allegations in the Underlying Lawsuit all involve acts by Roosevelt Tilmon and Mona Tilmon that "place[d ] [the minor child] at [an] unreasonable risk of harm [that] affect[ed] [her] life, physical [and] mental health, [and] safety." The issue here is not whether Roosevelt Tilmon or Mona Tilmon were charged with or convicted of a crime, as is clearly provided in the Policy.

Rather, the issue is whether the acts of Roosevelt Tilmon and Mona Tilmon, as alleged in the Amended Complaint, constitute criminal acts under the statute, which clearly they do. It does not matter that Davis contends their actions were negligently done. The Amended Complaint alleges that as a result of their acts, the minor child has experienced physical and mental issues including hygienic concerns, nightmares, suicidal thoughts, and emotional distress. Roosevelt Tilmon and Mona Tilmon's acts and the resulting injuries of those acts are all within the

-35-

scope of this statute and are, therefore, expressly excluded under the Policy. *See, e.g., Allstate Ins. Co. v. Burrough*, 120 F.3d 834, 839-840 (8th Cir. 1997) ("Regardless of whether he could be tried as an adult or be adjudged a juvenile delinquent, under the plain language of the Arkansas criminal code, [the insured] committed a criminal act. Hence he committed a criminal act for purposes of Allstate's criminal acts exclusion….Finally, it makes no difference whether [the insured] was, or ever will be, adjudged a juvenile delinquent or criminally convicted under the terms of the criminal acts exclusion, coverage for bodily injury reasonably expected to result from a criminal act is excluded 'regardless of whether or not such insured person is actually charged with, or convicted of a crime.'" (quoting insurance policy)).

### E. There is no "occurrence" because the alleged negligent acts of Roosevelt Tilmon and Mona Tilmon are derivative of Anthony Curtis Tilmon's intentional and criminal acts.

Further, the district court's finding of no coverage may be affirmed because Anthony Curtis Tilmon's sexual assault of the minor child does not constitute an "occurrence" under the Policy. The Policy clearly and unambiguously provides that it "applies only to losses or **occurrences** that take place during the policy period." Because Anthony Curtis Tilmon's sexual assault of the minor child, the basis for the Underlying Lawsuit, does not constitute an "occurrence", the Policy does not provide coverage for the Underlying Lawsuit.

-36-

Davis relies on the court's reasoning in *Safeco Insurance Company of America v. White*, 913 N.E.2d 426 (Ohio 2009) in contending that coverage is extended under the Policy for the negligent acts of Roosevelt Tilmon and Mona Tilmon.  Davis' reliance on this case is misplaced.  In *White*, the insurer sought a declaration that its policy did not provide coverage for the parents of an adult child who molested his daughter's friend.  The court determined the exclusions for intentional acts did not apply to the parent's acts, which it deemed accidental.  The court noted that there was a split among the jurisdictions with regard to whether exclusions for intentional and/or illegal acts of an insured preclude coverage for the negligent acts of the other insureds to the policy.  The court explained:

> We acknowledge that a split has arisen in the federal and state courts that have examined this precise issue.  Several courts have followed the above approach, examining each tort on its own merits and declining to apply intentional-act and illegal-act exclusions (or similar exclusions) to preclude coverage for negligent acts related to intentional torts….Other courts have taken the opposite approach, finding that the injuries from negligent conduct related to an intentional tort are inextricably related to the injuries arising from the intentional tort, and therefore coverage is precluded for both under the intentional act and illegal-act exclusions….

*White*, 913 N.E.2d at 435.  In making its determination, the court explained that Ohio precedent required it follow the approach of examining each tort on its own merits.

-37-

Such is not the case under South Carolina law.  For example, in *St. Paul Reinsurance Co., Ltd. v. Riviello*, 296 Fed.Appx. 377 (4th Cir. 2008), the Fourth Circuit reached an opposite determination applying South Carolina law.  In that case, St. Paul brought suit seeking a declaration that it owed no coverage for the damages sustained by the claimant who was assaulted by other patrons of a restaurant owned by the insureds.  In the underlying lawsuit, the claimant brought suit against the insureds for his injuries, which he contends were caused by "their negligent or reckless breach of a duty to (1) provide a safe and controlled environment for the entertainment of invitees, (2) prevent the sale of alcohol to a person in an intoxicated condition, (3) prevent the sale of alcohol to minors, and (4) protect against the foreseeable criminal acts of third parties."  *Riviello*, 296 Fed.Appx. at 378-379.  The court determined there was no coverage available under the policy.

The *Riviello* court examined and agreed with the district court's determination and explained that the district court relied upon the decision in *Sphere Drake Insurance Company v. Litchfield*, 313 S.C. 471, 438 S.E.2d 275 (Ct. App. 1993) in granting the insurer's motion for summary judgment.  The court explained:

> In *Sphere Drake,* the state court of appeals held that an assault and battery exclusion in a nightclub's insurance policy applied to a patron's assault and battery and negligence claims arising from an incident in which the nightclub's "bouncer" assaulted a patron.  The

-38-

policy in *Sphere Drake* excluded "claims arising out of Assault and Battery, whether caused by or at the direction of, the insured, his employees, patrons [or] any cause whatsoever." *Id.* at 277. The court of appeals reasoned:

> [T]he separate acts of negligence alleged by [the plaintiff] are not actionable without the assault and battery, because without the assault and battery there would be no damage suffered as a result of the alleged negligence of [the defendant nightclub]. The negligence claims are for bodily injury "arising out of" assault and battery and come within the exclusion.

*Riviello*, 296 Fed.Appx. at 379.

The court then went onto explain that the district court, "[a]pplying South Carolina law to the facts of this case" concluded:

> In this case, the exclusionary clauses in both the Commercial General Liability Coverage Part and the Commercial Liquor Liability Coverage Part of the Policy unambiguously apply to the underlying lawsuit. In readily understandable language, these provisions exclude coverage for claims arising out of assault and battery, "whether caused by the insured, an employee, a patron or any other person" or by the "negligence of the insured, his employees, patrons or any causes whatsoever." As was the case in *Sphere Drake,* the separate acts of negligence alleged in the underlying lawsuit would not be actionable without the assault and battery, because the only injuries suffered by Riviello were the result of the assault and battery. As such, the claim against the Ollie's [appellants] for negligence "arose from" the alleged assault and battery, and are excluded from coverage under the plain terms of the Policy. 242 F.R.D. at 351.

*Id.* at 379. *See also Taylor v. Am. Fire & Cas. Co.*, 925 P.2d 1279, 1282-1283 (Utah App. 1996) (rejecting the finding of coverage for the claims for negligent supervision against the insureds and explaining that "[t]he majority of jurisdictions have adopted the contrary position. These cases reason that where the negligent

-39-

supervision is so inextricably intertwined with the motor vehicle, there is no independent nonauto-related [sic] act which would take the claim outside the scope of the motor vehicle exclusionary clause. Thus, negligent supervision claims are excluded from coverage where the acts complained of could not have resulted in injury but for the use of the automobile.").

The same result would be reached here. While Davis' Amended Complaint artfully tries to plead around Allstate's coverage defenses to the Underlying Lawsuit, however, even Davis recognizes that, "[a] Plaintiff cannot defeat coverage by couching intentional or criminal acts in negligence terms." [JA131]. The undisputed fact is that Roosevelt Tilmon and Mona Tilmon's alleged negligent acts would not be actionable without Anthony Curtis Tilmon's sexual abuse of the minor child, a criminal and intentional act. Because the actions complained of in the Underlying Lawsuit arise from Anthony Curtis Tilmon's criminal and intentional sexual abuse of the minor child, not the alleged acts and omissions of either Roosevelt Tilmon or Mona Tilmon, there is no "occurrence" for which the Policy provides coverage. Therefore, the district court's grant of summary judgment in Allstate's favor should be affirmed.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order granting summary judgment in Allstate's favor.

Respectfully submitted by,

GALLIVAN, WHITE & BOYD, P.A.

By: ____/s/ A. Johnston Cox_____

A. Johnston Cox (Fed. I.D. No. 6534)
Janice Holmes (Fed. I.D. No. 11366)
1201 Main Street, Suite 1200
Post Office Box 7368
Columbia, South Carolina 29202
Telephone:  803-779-1833
Facsimile:   803-779-1767
jcox@GWBlawfirm.com
jholmes@GWBlawfirm.com

Attorneys for Appellee Allstate Indemnity Company

October 30, 2013

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(E) OR 32(A)

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. Type-Volume Limitation: Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☒ this brief contains   9,510   [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   ☐ this brief uses a monospaced typeface and contains [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. Typeface and Type Style Requirements: A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 101/4 characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this brief has been prepared in a proportionally spaced typeface using Microsoft   **WORD**   [*identify word processing program*] in 14-point Times New Roman [*identify font size and type style*]; or

   ☐ this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

*/s/ A. Johnston Cox*
Attorney for Allstate Indemnity Company

Dated: 10/30/14

## CERTIFICATE OF SERVICE

I certify that on <u>October 30, 2014</u>, the foregoing BRIEF OF APPELLEE ALLSTATE INDEMNITY COMPANY was filed on the CM/ECF system, which served the document on all parties or their counsel.


<u>   /s/A. Johnston Cox      </u>
A. Johnston Cox

*Counsel for Appellee Allstate Indemnity Company*